IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BRAD HUNTER SMITH**                                                                 **PETITIONER**

v.                                          No. 4:22-cv-00584-JTK

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction**                                              **RESPONDENT**

## ORDER

1. Brad Hunter Smith seeks *habeas* relief from his state court capital murder conviction and life imprisonment sentence. The Cleveland County jury found Smith acted with premeditation and deliberation when he killed Cherrish Allbright. Deciding the aggravators outweighed the mitigating circumstance, the jury imposed the death penalty. The jury also found Smith guilty of kidnapping and abuse of a corpse. He was sentenced to consecutive terms of twenty years and ten years, respectively. The Arkansas Supreme Court affirmed the capital murder conviction and death sentence, *Smith v. State* (*Smith I*), 2018 Ark. 277, 555 S.W.3d 881, and the United States Supreme Court denied *certiorari*, *Smith v. Arkansas*, 139 S. Ct. 2666 (2019) (Mem). The Arkansas Supreme Court affirmed in part and reversed in part the denial of post-conviction relief, and remanded for resentencing with respect to the death sentence. *Smith v. State* (*Smith II*), 2020 Ark. 410, 2020 WL 7253448. The post-conviction mandate was entered on January 28, 2021. *Doc. 16-11*. On remand, the prosecution waived the death penalty, and the trial court imposed the only available alternative sentence—life imprisonment without the possibility of parole. The trial court ordered the life imprisonment sentence to be served consecutively with the twenty-year sentence for kidnapping and the ten-year sentence for abuse of a corpse. *Docs. 16-2 at 5 & 16-12 at 4–5*. The resentencing order was entered on August 9, 2021. *Doc. 16-2 at 1*.

Smith filed a federal *habeas* petition on June 22, 2022. *Doc. 2*. At the Court's direction, he filed an amended petition on December 9, 2022, naming his custodian as the respondent and paying the applicable filing fee.

In the amended petition, Smith states one ground for relief:

> The prosecutor included the homicide of the fetus[, which] tainted my trial at the conviction/guilt phase. In effect the jury thought I was being put on trial for the murder of the fetus without giving me notice and therefore violat[ed] my constitutional right of having notice of the charges against me.

*Doc. 5 at 5*. On May 5, 2023, United States District Judge James M. Moody, Jr., reassigned this case to the undersigned pursuant to the parties' consent to a United States Magistrate Judge's jurisdiction. *Doc. 17*.

2. In *Smith I*, the Arkansas Supreme Court recited the evidence heard by the jury:

> In November 2015, Allbright disclosed to Smith that she was pregnant with his child. Throughout the following weeks he made numerous comments to friends, family, and coworkers that he needed help committing a murder. Ultimately, on December 3, 2015, Smith enlisted the help of his two friends, Jonathan Guenther and Joshua Brown, to kill Allbright and hide her body. According to the plan, Brown would call Allbright under the pretenses of wanting to smoke marijuana and then drive her to a nearby field where Guenther and Smith would be lying in wait.
>
> When Brown arrived at the field with Allbright, Guenther and Smith were hiding behind some trees. When Allbright exited and walked to the front of the vehicle, Smith stood up and shot her through the back with a crossbow bolt. She attempted to get back into the vehicle, but Smith ordered her to get down on the ground on her knees. He then used a wooden baseball bat to hit her twice in the back of the head, killing her. The trio then loaded the body onto the back of a trailer, transported it to a gravesite behind Smith's house, and buried her.

2018 Ark. 277, *1–2, 555 S.W.3d at 883–84.

3. Smith raised four points on direct appeal, including an issue related to the aggravators submitted to the jury. At sentencing, all members of the jury found in mitigation that Smith was a youth when he committed the capital murder. *Doc. 16-4 at 21–22*. The jury unanimously found

two aggravating circumstances: (1) In the commission of the capital murder, Smith knowingly created a great risk of death to a person other than the victim or knowingly caused the death of more than one person (Cherrish Allbright and unborn child) in the same criminal episode; and (2) the capital murder was committed in an especially cruel or depraved manner. *Doc. 16-4 at 20*.

Smith contended the trial court erroneously permitted the jury to consider the death of Allbright's unborn child in determining whether he (Smith) knowingly caused the death of more than one person in the same criminal episode. *Smith I*, 2018 Ark. 277, *3–5, 555 S.W.3d at 884–85. Under Arkansas law, the jury may consider in aggravation whether "[t]he person in commission of the capital murder knowingly created a great risk of death to a person other than the victim or caused the death of more than one (1) person in the same criminal episode." Ark. Code Ann. § 5-4-604(4) (2013). The criminal code provides a definition of person:

> (13)(A) "Person," "actor," "defendant," "he," "she," "her," or "him" includes:
>
> (i) Any natural person; and
>
> (ii) When appropriate, an organization as defined in § 5-2-501.
>
>  (B)(i)(a) As used in §§ 5-10-101–5-10-105, "person" also includes an unborn child in utero at any stage of development.
>
>  (b) "Unborn child" means offspring of human beings from conception until birth.[1]

Ark. Code Ann. § 5-1-102(13) (2013) (in relevant part). Smith argued that, because the definition of a person in § 5-1-102(13)(B)(i)(a) does not refer to § 5-4-604(4), the trial court's submission of the aggravating circumstance was constitutional error. The Arkansas Supreme Court did not address the merits, holding Smith abandoned the argument at trial and the issue did not qualify for

---

[1] In Acts of 2021, Act 931, § 1, the General Assembly amended Ark. Code Ann. § 5-1-102(13)(B)(i)(a) to refer to Ark. Code Ann. § 5-4-604. The current version states, "As used in §§ 5-10-101–5-10-105 and 5-4-604, "person" also includes an unborn child in utero at any stage of development."

the death penalty exception permitting review of points raised for the first time on appeal. *Smith I*, 2018 Ark. 277, *3–5, 555 S.W.3d at 884–85. The Supreme Court declined to address the point on mandatory review, holding Smith's argument was based on a "limited statutory interpretation" issue and not essential to the jury's consideration of the death penalty. *Smith I*, 2018 Ark. 277, *8–9, 555 S.W.3d at 887. *See* Ark. R. App. P. Crim. 10(b)(ii).

**4.**  Smith next sought post-conviction relief under Rule 37.5 of the Arkansas Rules of Criminal Procedure. The Arkansas Supreme Court, reversing the circuit court, held the trial lawyers' penalty phase work fell below the constitutional standard when they abandoned their objection to the submission of the unborn child's death as an aggravator. *Smith II*, 2020 Ark. 410, *7–10, 2020 WL 7253448, **3–4. The Supreme Court recognized that the definition of a person in § 5-1-102(13)(A) applied to the entire criminal code, but that the definition in § 5-1-102(13)(b)(i), recognizing an unborn child as a person, was "specifically restricted" to the homicide statues at §§ 5-10-101 through 5-10-105. *Smith II*, 2020 Ark. 410, *8, 2020 WL 7253448, **3. The Court determined the trial court therefore erred in submitting the unborn child's death as an aggravator. The Court held the trial lawyers' performance was constitutionally ineffective when they abandoned the argument at trial. *Smith II*, 2020 Ark. 410, *10, 2020 WL 7253448, **4. Because only one aggravator should have been submitted to the jury, the Court determined there was a reasonable probability that, absent the trial lawyers' error, the jury would have decided a different sentence. *Smith II*, 2020 Ark. 410, *10–11, 2020 WL 7253448, **5.

The Court held the remaining claims were moot. *Id.* In a footnote, the Arkansas Supreme Court affirmed the circuit court's finding that the guilt phase instruction on the capital murder elements did not result in a due process violation. *Smith II*, 2020 Ark. 410, *11 n.5, 2020 WL 7253448, **5 n.5.

5.  Payne first argues the *habeas* petition is time-barred and therefore should be dismissed. There is a one-year limitations period for filing a petition "by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitations period is triggered by the last occurring of four events set out in 28 U.S.C. § 2244(d)(1)(A) through (d)(1)(D). In this case, the limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The issue is whether judgment triggering the limitations period for Smith's petition is based on the amended sentencing order imposing the death penalty, *Doc. 16-2 at 6*, or the resentencing order imposing life imprisonment, *Doc. 16-2 at 1*.

If the amended sentencing order is the § 2244(d)(1)(A) judgment triggering the limitations period for Smith's petition, the judgment became final when the United States Supreme Court denied *certiorari* on June 3, 2019. *Smith v. Bowersox*, 159 F.3d 345, 348 (8th Cir. 1998). Because Smith filed a timely Rule 37 petition on March 19, 2019, before the Supreme Court's denial of *certiorari*, the limitations period would be tolled until the Arkansas Supreme Court issued the *Smith II* mandate on January 28, 2021. *Doc. 16-11*. *See* 28 U.S.C. § 2244(d)(2). Under this scenario, the deadline for filing the *habeas* petition was January 28, 2022, and the petition was filed outside the limitations period. But, if the finality of the judgment was delayed until the trial court entered the resentencing order, the one-year limitations period began running when the thirty-day period for filing a notice of appeal (from the resentencing order) expired on September 8, 2021. *See* Ark. R. App. P. Crim. 2(a). Because Smith filed the *habeas* petition on June 22, 2022, the petition would be timely filed within the one-year limitations period.

6.  In *Burton v. Stewart*, the United States Supreme Court recognized that, while the petitioner's sentencing challenges were winding through state court, the *habeas* limitations period

did not begin running for claims challenging the underlying conviction. 549 U.S. 147, 156–57 (2007). "Final judgment in a criminal case means sentence. The sentence is the judgment." *Id.* at 156 (quotations omitted). The petitioner's limitations period therefore did not begin running until "both his conviction *and* sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review . . .'" *Id.* at 156–57 (emphasis original).

Applying *Burton*, the majority view is that, when a defendant is resentenced, "the limitations period under § 2244(d)(1)(A) runs from the judgment entered upon resentencing—even if . . . the defendant's habeas petition challenges the underlying conviction." *Woodfolk v. Maynard*, 857 F.3d 531, 542 (4th Cir. 2017). The most recent judgment authorizing the petitioner's current detention controls the statute of limitations because "the period begins to run when both the conviction *and* sentence are final." *Ferreira v. Secretary, Department of Corrections*, 494 F.3d 1286, 1292–93 (11th Cir. 2007) (emphasis original). "[J]udgment is based on both the conviction and the sentence." *Id.* at 1293. *See also Scott v. Hubert*, 635 F.3d 659, 665–66 (5th Cir. 2011) ("*Burton* establishes that [the] limitations period does not begin until both [the] conviction and sentence have become final. This Court [in an unpublished opinion] has already clarified that this rule applies even to cases (such as this one) in which the petitioner challenges only his conviction and not his sentence.") (quotations omitted); *Rashad v. Lafler*, 675 F.3d 564, 568 (6th Cir. 2012) ("To our knowledge, all of the circuits to address this question after *Burton* agree that the limitations clock in this setting begins after the new sentence."); *United States v. Anthony*, 25 F.4th 792, 800 (10th Cir. 2022) ("[A] remand for resentencing delays finality until the defendant is resentenced and direct review of the new sentence is complete.").[2]

---

[2] The minority view is that, for claims challenging the underlying conviction, the one-year limitations period is not delayed when a resentencing order is entered. *Prendergast v. Clements,* 699 F.3d 1182, 1186–88 (10th Cir. 2012) (without referencing *Burton*).

The Tenth Circuit Court of Appeals has recognized that an exception to the resentencing forming part of the judgment exists when the resentencing on remand is "purely ministerial." *Anthony*, 25 F.4th at 800 n.9 (quotations omitted). A ministerial remand is "one requiring a routine, nondiscretionary act by the [trial] court that could not have been appealed on any valid ground." *Id.* (quotations omitted). The Eleventh Circuit has held that a sentence reduction in exchange for the defendant's providing substantial assistance under Rule 35(b) of the Federal Rules of Criminal Procedure "does not constitute a resentencing where an old sentence is invalidated and replaced with a new one." *Murphy v. United States*, 634 F.3d 1303, 1314 (11th Cir. 2011). Because the sentence reduction does not correct and replace an invalid sentence, there is not a new sentencing and already-existing conviction forming a new judgment to trigger the limitations period. *Id.* at 1313.

7. Instead of addressing *Burton* and the cases that followed, Payne points to *Magwood v. Patterson*, 561 U.S. 320 (2010). In both the *Burton* cases and the *Magwood* cases, courts have considered the effect of resentencing on a judgment. While the *Burton* cases address the effect of resentencing on the *habeas* limitations period, the *Magwood* cases consider how resentencing relates to the limits on second or successive *habeas* applications.

The United States Supreme Court, in *Magwood*, held that if "there is a new judgment intervening between the two habeas petitions, an application challenging the resulting new judgment is not [a] second or successive" petition requiring dismissal or appellate pre-authorization under 28 U.S.C. § 2254(b). *Magwood*, 561 U.S. at 341–42 (quotations omitted). The Supreme Court considered that 28 U.S.C. § 2244(b)(1) limits "a second or successive habeas corpus application under section 2254" and that a § 2254 application is an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the *judgment* of a State court," *Id.*

7

332 (emphasis original) (quoting 28 U.S.C. § 2254). The petitioner is seeking invalidation of the judgment authorizing his confinement; if the writ is granted, the State may seek a new judgment. *Id.* Because "'second or successive' must be interpreted with respect to the judgment challenged," the first *habeas* application challenging a resentencing—even if a second-in-time petition—is not second or successive under § 2244(b). *Id.* at 332–333. The Supreme Court did not address whether a new judgment based on resentencing permits a petitioner to file a second-in-time petition challenging the undisturbed underlying conviction. *Id.* at 342.

Since *Magwood*, most circuit courts considering the issue have determined that, because the conviction and resentencing form a single judgment, the first post-resentencing petition is not second or successive regardless of whether the petition challenges the underlying conviction or the resentencing. *See In re Gray*, 850 F.3d 139, 142–43 (4th Cir. 2017) (collection of cases); *see also Shields v. Gibson*, No. 5:18-cv-265-BSM, 2019 WL 13461352, *1–2 (E.D. Ark. 2019) (finding the petitioner may challenge his underlying conviction in a second-in-time *habeas* petition because "there is presently no reason to think that the Eighth Circuit would deviate from the majority rule").[3]

In *Dyab v. United States*, the Eighth Circuit Court of Appeals considered whether the district court's order amending the judgment's restitution terms—identity of payees and joint liability of convicted co-conspirator—was a new sentence, or intervening judgment, permitting the petitioner to file a second-in-time petition challenging the underlying conviction. 855 F.3d 919, 923 (8th Cir. 2017). The Circuit recognized that "[n]ot every change to a judgment results in a

---

[3] A divided panel of the Seventh Circuit Court of Appeals has gone a different direction, holding that, after a prisoner was resentenced, a second-in-time 28 U.S.C. § 2255 motion challenging the underlying conviction was a second or successive application. *Suggs v. United States*, 705 F.3d 279, 282–85 (7th Cir. 2013) (relying on pre-*Magwood* circuit precedent and determining *Magwood* did not address the issue).

8

new sentence or judgment that wipes clean the slate of post-conviction motions previously filed." *Id.* Concluding the district court's restitution order was comparable to a sentence modification under 18 U.S.C. § 3582(c) and the correction of clerical errors, the Circuit held the restitution order was not a new sentence or judgment. *Id.* at 923–24. "There was no substantive proceeding that adjudicated [the petitioner's] guilt or determined the appropriate punishment." *Id.* The district court did not "alter the amount of [the petitioner's] restitution obligation or otherwise change [his] sanction." *Id.* Because the district court's order was not a new sentence, the second-in-time petition was a second or successive petition requiring appellate pre-authorization for filing. *Id.* The Circuit did not distinguish between challenges to the sentence and to the underlying undisturbed conviction.

**8.** Payne argues that Smith's resentencing was "mechanical" for two related reasons: (1) only life imprisonment remained as an available sentence for capital murder after the prosecution waived the death penalty, and (2) resentencing was not the result of re-assessment of evidence, argument, and law, as in *Magwood*, 561 U.S. at 326. Payne contends the resentencing did not affect the finality of the judgment or the limitations period. His arguments are not convincing.

The prosecution's waiver of the death penalty does not affect the analysis of the resentencing order and its effect on the judgment. The Arkansas Supreme Court invalidated the death sentence because the trial lawyers' penalty phase work fell below the constitutional standard. *Smith II,* 2020 Ark. 410, *7–10, 2020 WL 7253448, **3–4. When the Supreme Court remanded for resentencing, Smith was entitled to a new sentencing with a jury considering whether a death sentence or life imprisonment was the appropriate punishment for the capital murder conviction. Because the prosecution decided not to seek the death penalty, the trial court imposed the only available sentence—life imprisonment without the possibility of parole. The Arkansas Supreme

9

Court's remand was not ministerial; a new sentence was imposed. Nor was the resentencing a statutory modification of a sentence, a correction of a clerical error, or amending of restitution terms. There was not a reassessment of the evidence and argument at a new penalty phase only because the prosecution decided not to seek the death penalty. Because Smith was resentenced to serve life imprisonment, the conviction and the new sentence authorizing Smith's detention form the judgment, which became final when Smith did not file a notice of appeal.

9. Payne alternatively argues that, even if the resentencing order delayed the limitations period for claims challenging the resentencing, Smith's claim challenging his conviction is time-barred. Payne says the judgment triggering the limitations period for the claim is the capital murder conviction, which was unaffected by the resentencing. Payne is incorrect. Because final judgment means the sentence, the *habeas* limitations period does not begin running until "both [the] conviction *and* sentence become final." *Burton*, 594 U.S. at 156. *DeCoteau v. Schweitzer*, relied on by Payne, is inapposite. 774 F.3d 1190 (8th Cir. 2014). In *DeCoteau*, the Eighth Circuit held the *habeas* limitations period applies on a claim-by-claim basis to each claim in a *habeas* application, depending on the triggering accrual date of each claim under 28 U.S.C. § 2244(d)(1)(A) through (d)(1)(D). *Id.* at 1191. The Circuit, in *DeCoteau*, did not address the effect of a resentencing order on the finality of the judgment in § 2244(d)(1)(A).

10. The finality of Smith's judgment was delayed when the Arkansas Supreme Court remanded for resentencing. The conviction and the life imprisonment sentence authorizing Smith's detention formed the judgment. *Burton*, 594 U.S. at 156. The judgment became final when the thirty-day period for filing a notice of appeal expired on September 8, 2021. Ark. R. App. P. Crim. 2(a). Smith therefore timely filed the *habeas* petition within the one-year limitations period on June 22, 2022.

**11.** Turning to Smith's claim for relief, Smith argues his right to due process was violated when the prosecution "included the homicide of the fetus" in the guilt phase. *Doc. 5 at 5*. Smith says the prosecution's misconduct led the jury to believe that he had been charged with murdering the unborn child. Smith does not specify the purported statements made by prosecution that confused the jury.

**12.** To the extent Smith is repeating the due process claim—the trial court's guilt phase instruction on the capital murder elements was improper and confused the jury—raised in state court, the claim is exhausted and therefore reviewed with 28 U.S.C. § 2254(d) deference to the state court decision. *See Smith II*, 2020 Ark. 410, *11 n.5, 2020 WL 7253448, **5 n.5.

Smith was charged only with the capital murder of Allbright. *Doc. 16-3 at 3*. Prior to jury deliberations, the trial court instructed the jury on the capital murder elements:

> Brad Hunter Smith is charged with the offense of Capital Murder. To sustain the charge, the State must prove the following beyond a reasonable doubt:
>
> That with the premeditated and deliberated purpose of causing the death of another person, Brad Hunter Smith caused the death of Cherrish F. Albright.
>
> Person—includes an unborn child in utero at any stage of development. . . .

*Doc. 16-4 at 7–8*.

Smith did not object to the guilt phase instruction at trial or raise the issue on direct appeal. He first raised a due process violation based on the instruction in the second amended Rule 37 petition. *Doc. 16-8 at 18*. The circuit court found no error, and the Arkansas Supreme Court affirmed:

> Smith briefly mentioned on appeal that the circuit court referenced section 5-1-102(13)(B) definition of a "person" in reading instructions to the jury at the guilt phase of the trial and argues that this confused the jury, violated his right to due-process rights, and requires reversal of his conviction. We see no clear error in the circuit court's denial of this point. Moreover, Smith has not developed an argument

11

> on this issue as part of his ineffective-assistance claim, and we will not do so for him. (citation omitted).

*Smith II*, 2020 Ark. 410 at 11 n.5, 2020 WL 7253448, **5 n.5.

The Arkansas Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law; nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Immediately before instructing the jury on the statutory definition of person as including an unborn child, the trial court stated that Smith was charged with the capital murder of Allbright. *Doc. 16-4 at 7–8*. While the definition of a person provided by the trial court is superfluous, Smith has not shown "a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Rousan v. Roper*, 436 F.3d 951, 961 (8th Cir. 2006) (quotations omitted). Nor has Smith demonstrated that the error had "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (quotations omitted). Evidence of guilt was overwhelming. Jurors heard testimony that, before killing Allbright, Smith talked with friends and family about needing help with the murder. With the help of accomplices, Smith lured Allbright to a field. He then shot her in the back with a crossbow bolt, forced her to kneel on the ground, and then twice hit her in the back of the head with a wooden bat. *Smith I*, 2018 Ark. 277, *1–2, 555 S.W.3d at 883–84. An accomplice confessed and led officers to Allbright's shallow grave. *Id.*

**13.** If Smith is raising a prosecutorial misconduct claim based on improper argument or witness examination during the guilt phase, the claim is raised for the first time on *habeas* review. Because Smith did not present the claim in state court and there is no available state court relief, the claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). This Court therefore can consider the claim only if Smith establishes either cause for the default and actual prejudice,

or that the default will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause, Holland must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

**14.** Smith says that he did not present the claim in state court because his lawyers did not consult with him or raise the issue. He says "[t]hey told me they were going to do something [but] then did another." *Doc. 5 at 5*. Constitutionally ineffective assistance of counsel is an example of cause. *Id.* at 488. Smith, however, has not properly raised or demonstrated a constitutional ineffectiveness claim based on his lawyers' failure to raise prosecutorial misconduct. Nor has he shown that his state court lawyers abandoned him. He has not shown that they stopped "operating as his agent in any meaningful sense of the word." *Maples v. Thomas*, 565 U.S. 266, 281 (2012). Smith has not demonstrated cause to excuse procedural default, and he has not raised actual innocence as a gateway to consider the procedurally defaulted claim. The prosecutorial misconduct claim is therefore denied.

**13.** The prosecutorial misconduct claim also fails under alternative merits analysis. Smith has not pointed to the prosecution's statements that, he says, confused the jury. In any event, Smith has not demonstrated that any remarks about the unborn child "infected the trial with enough unfairness to render [his] conviction a denial of due process." *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (quotations omitted). He has not shown that any remarks were "so egregious that they fatally infect[ed] the proceedings and render[ed] [his] entire trial fundamentally unfair." *Id.* (quotations omitted). Nor has Smith demonstrated that any error had "substantial and injurious effect or influence" on the verdict. *Brecht*, 507 U.S. at 622. As recited herein, there was overwhelming evidence that Smith killed Allbright with the premeditated and deliberated purpose

13

of causing her death. Although Smith was charged with the capital murder of Allbright, her pregnancy was part of the guilt phase evidence. The autopsy showed that Allbright died of blunt force injuries and that a "[f]ive-week +/- gestational age embryo" was present. *Smith II*, 2020 Ark. 401, *1, 2020 WL 7253448, **1. Under alternative merits analysis, the prosecutorial misconduct claim also fails.

* * *

For all the reasons stated, Smith's *habeas* petition fails and will be dismissed.

SO ORDERED.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE


12/09/2024
DATE